UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARGARET ANN HUDERT, *et. al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ALION SCIENCE & TECH. CORP., *et. al.*, <br><br> Defendants, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et. al.*, <br><br> Third-Party Defendants. | Civil Action No.: 05-cv-00545 (RBW) <br> 06-cv-00834 (RBW) |

**DEFENDANT DAY AND ZIMMERMAN SERVICES, INC.'S RESPONSE
TO THE COURT'S SHOW CAUSE ORDER**

COMES NOW, Defendant Day and Zimmerman Services, Inc. ("D&Z"), by and through undersigned counsel, and responds to the Court's Order dated August 18, 2008 to Show Cause why Defendant, Consolidated Engineering Services, Inc. ("CES") should not be dismissed from this action, with prejudice and states as follows:

**I.   INTRODUCTION**

This action arises out of a steam explosion in the underground Steam Distribution Complex (SDC) in the vicinity of the New Executive Office Building (NEOB) on 17th Street N.W., Washington, D.C., in April, 2004. The General Services Administration owns and operates the SDC and the associated steam plant (the "Plant"), which supplies steam into the SDC. Prior to 2002, the GSA operated, maintained and inspected all sections of the SDC and the Plant. In 2002, the GSA contracted with D&Z to inspect the 12 miles of SDC piping *outside of the Plant*. As of April, 2004, the GSA had engaged CES to inspect, maintain, and repair certain

{DE115660.1}                                                       1

steam facilities and components within the Plant. Under its contract, D&Z was required to conduct regular inspections of the SDC, including its manholes, pipes and tunnels, and to perform limited preventive maintenance and repairs associated with those inspections. No discovery has been taken concerning the extent of CES's responsibilities *within the Plant*, the specific terms of its contract with the GSA vis-á-vis the Plant, or how that contract was managed.

Under a separate contract, the GSA engaged Grunley-Walsh to perform a comprehensive replacement and renovation of the SDC along the length of 17th Street N.W. (the "Project"). As part of this Project, Grunley-Walsh was at one point contracted to renovate all of the manholes along 17th Street N.W. and replace the SDC steam and condensate piping, valves and related parts. Initially, the Project included renovating Manhole 11, which is the location of the steam explosion giving rise to this action. However, this piece of the contract was ultimately removed due to time and/or budgetary constraints. The Project also included the tie-in of an 8-inch water line to the existing 20-inch water main under 17th Street. Grunley-Walsh subcontracted with Cherry Hill for this installation. Frank Stotmeister was the onsite Superintendent for Grunley-Walsh at the time of the explosion. Plaintiff Joseph Hudert was the onsite Superintendent for Cherry Hill at the time.

At approximately 2:00 a.m. on April 23, 2004, Cherry Hill cut into the main water line to perform the tie-in, and water began flooding Manhole vaults 9 and 10, covering the uninsulated, exposed steam pipes in the vaults. This caused a "water hammer event." Specifically, the pipes began to shake violently and emit a loud knocking or banging sound, as though a large hammer was hitting them. The hammering was so violent, a valve gasket on the main steam line entering the NEOB mechanical room failed, causing the mechanical room to fill with steam, and employees to evacuate the building.

No discovery has been taken concerning the extent the water hammer event affected operations within the Plant, the response, if any, by CES employees stationed within the Plant, the obligations, if any, of CES employees pertaining to whether CES was required to inspect the Plant following such a water hammer event. The GSA's Accident Investigation Report (Exhibit A) does not identify the events unfolding in the Plant, or any inquiry made into the conditions present at the Plant at the time of the water hammer event. The record is devoid of any indication about whether the NEOB Plumbers ever contacted the Plant personnel, or whether they were required to do so under the circumstances. No NEOB Plumbers or other GSA employees have been produced for deposition to date.

**II.   PROCEDURAL HISTORY**

The deaths of Mr. Stotmeister and Mr. Hudert lead to several actions, including this action. An action brought by Mr. Stotmeister's estate and survivors was recently removed to this Court.[1] CES and D&Z were joined to this and the Stotmeister actions by way of amendments to the original complaints in each. The allegations against D&Z and CES did not relate back to Plaintiffs' original complaints such that most of them are barred by the applicable statutes of limitations. CES filed its motions to dismiss the time barred claims (in the *Stotmeister* and *Hudert* actions), which were granted by both courts such that CES was almost entirely extricated from the matter. D&Z anticipates filing its motion on the same basis on September 2, 2008.

As a result of CES's motion in this action, the Court, by Order dated November 30, 2007, temporarily lifted the current discovery stay so as to permit Plaintiffs 45 days in which to investigate "the issue of Consolidated Engineering Services, Inc.'s responsibility for maintaining the steam tunnels and pipelines in question on April 23, 2004." (Order, D.I. #166) This period expired with no investigation into CES's potential liability associated with activities at the Plant.

In February 2008, following the expiration of the limited discovery period, CES began negotiating with counsel in both cases for its voluntary dismissal of the remaining claims, with prejudice. Unfortunately, counsel was unable to reach consensus with the other parties in these actions until February 26, 2008, when all parties to the Stotmeister action except D&Z agreed to its dismissal, and all but 3 parties in this action had done so. <u>At no time has D&Z had cross-claims against CES in either action.</u> D&Z did not communicate an objection to or approval of the dismissal. Two days later, all Counsel except counsel for CES participated in a teleconference at which the issue of D&Z's likely joinder of the United States as a Third-Party Defendant to the Stotmeister action was discussed. The anticipated result was that the United States would ultimately remove that action to this Court, and the multiple lawsuits finally be consolidated for purposes of discovery so as to limit expenses, promote judicial economy, and ensure consistent results for the litigants. At this juncture, only the first step of this journey has been completed.

Counsel for CES was apparently aware of the discussions of February 28, and on March 3, 2008, it filed a Stipulated Dismissal (D.I. 174) with the approval of all parties, except D&Z and Defendant United States of America. On that same day, CES also filed the motion which is the subject of the Court's August 18 Order to Show Cause (See D.I. 180 referencing D.I. 175). It was through these filings that, for the first time, D&Z learned that all parties except itself and the United States had consented to CES's dismissal from this action. The motion (D.I. 175) was largely based on the stipulated dismissal. It specifically noted that D&Z had no claims, cross-claims, or third party claims against CES. (See D.I. 175-3 at p. 4) On that basis, D&Z took no position on the Stipulated Dismissal or the motion at the time

---

[1] Case No. 1:08-cv-01193

Mr. Richard Small, CES's Director of Operations, provided an affidavit with the Motion (Exhibit B) stating that: (1) in April 2004, CES had a contract with GSA to provide maintenance and repair at the Plant, (2) CES did not perform any operation functions at the Plant "prior to and up to the date of the accident," and (3) CES did not operate, open or otherwise manipulate any of the valves that were part of the SDC on the date of the accident.

Three days later, on March 6, 2008, D&Z sought leave to join the United States as a Third-Party Defendant in the Stotmeister Action. The next day, just four days after CES filed its motion, the Stotmeister Court held a status conference. Counsel for CES and for D&Z were present and discussed the feasibility of D&Z agreeing to CES's dismissal on more limited terms than that described in CES's proposed stipulations and motions. Counsel for CES agreed indicated that this was an option; however, this was the last contact D&Z had with CES until the deposition of Grunley-Walsh employee Brian Staudenmaier on March 12, 2008. CES made no effort to address D&Z's agreeing to dismiss CES from either action at that time.

The parties next discussed CES's potential dismissal on March 20, 2008, at the deposition of Dr. James Jeng, Mr. Hudert's and Mr. Stotmeister's treating physician at the time of their respective deaths. Counsel for D&Z was then informed that CES was waiting for D&Z to prepare language to which it would stipulate. Less than a week later, on March 26, 2008 Counsel for D&Z e-mailed Ces's counsel regarding its potential dismissal (Exhibit C), attaching D&Z's proposed language for a stipulation (Exhibit D), suggesting that a stipulation of dismissal without prejudice would accomplish the same. The proposal preserved D&Z's right to initiate a claim against CES for contribution should discovery ultimately reveal CES's potential liability.

CES did not respond to D&Z's e-mail and apparently did not inform either Court that the parties were continuing in discussions on the subject. Two days later, on March 28, 2008, the

Stotmeister trial judge granted CES's motion in that action with prejudice. However, at the time, CES remained a party to this action. Since that dismissal, the parties to the Stotmeister action have largely ceased discovery, pending the anticipated removal of the action to this Court[2] and entry of a scheduling order. Counsel for CES and D&Z have had no real discussions about the feasibility of CES being dismissed without prejudice from this action. But for the Court's Order to Show Cause, the undersigned expected these discussions to be revived once the Court set a date for scheduling conferences in one or both actions.

### III.   LEGAL ARGUMENT

Summary judgment should only be entered where "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cobell v. Norton*, 260 F.Supp. 110, 116 (D.D.C. 2003); see also *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). If the Court determines that there exists "any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves," which, when considered in the light most favorable to CES (i.e. the non-moving party) and with all reasonable inference resolved in favor of CES, demonstrates the existence of a question of material fact, it must deny the motion. See *Celotex* at 324; see also *Sidibe v. Traveler's Insurance Company*, 468 F. Supp. 2d 97, 100 (D.D.C. 2006); (citations omitted).

Discovery in this litigation has generally been stayed since March 15, 2007 (See D.I. 95). However, discovery in the Stotmeister action continued. It revealed that CES had a maintenance contract with the GSA for the Plant that supplies steam to the section of the SDC at issue, that CES personnel in the Plant were available to provide services to the GSA in emergencies pursuant to that contract, and that CES personnel were likely present in the Plant at the time of

---

[2] See fn. 1.

the subject explosion.  CES admitted to the existence of its contract with the GSA in Mr. Small's affidavit (Ex. B).  Unfortunately, that contract was not produced at the deposition of CES's 30(b)(6) designee, Mr. Small, and still hasn't been produced despite requests by parties in both actions.

Of note in Mr. Small's affidavit, he went to great lengths to explain that CES employees performed no operational functions **in the Plant** "*prior to and up to the date of the accident*;" (*emphasis added*) and that CES did not operate, open, or manipulate any valves **on the SDC** *on the date of the accident*; but he did not go so far as to state that CES employees did not operate, open or manipulate any valves **in the Plant** that day.

A water hammer typically involves both ends of an affected line, to a certain extent.  Although expert discovery has not been done in either action yet, uncertain of what a "water hammer" was, Alion's Thomas Johnson investigated it and testified as to his understanding of the event as follows:

> "I looked the document up on the Internet, and what it does say is that it's a push of water that goes from the process of steam being condensated and creates water inside of it, and it's pushed from one end of the pipe to the other, and what happens is it rides on top of the steam that's what makes the hammering effect. It just keeps riding back and forth, to my knowledge."

(Exhibit E, Deposition of Thomas Johnson, Feb. 4, 2008, pg. 50, ln. 6-15)

The NEOB is essentially a terminal point in the steam lines originating at, and supplied by, the Plant maintained by CES.  Thus, if this event caused employees in the NEOB to fear for their lives, as has been reported (Ex. A), some apparently believing that bombs were going off in the vicinity, one must naturally question the events happening at the other end of the line, i.e., in the Plant itself.  This question becomes more poignant in light of the fact that, having taken the opportunity to clearly describe CES's activities before and during the incident, Mr. Small did not

commit to a statement that none of CES's employees manipulated any of the valves in the Plant at the time. Unfortunately, CES is seeking dismissal while discovery is open and ongoing, and no discovery has been taken as to the specific activities in the Plant on the day of the incident. The content of CES's contract with the GSA, the conditions present in the Plant on the morning of the accident, and the activities of CES's employees in the Plant at the critical time immediately preceding the explosion, are all currently unknown, but necessary to the full adjudication of liabilities relative to these deaths.

Given the current state of this litigation, the dismissal of CES *with prejudice* at this time is premature. However, D&Z is not committed to the position that CES should remain a party to this action indefinitely. Whereas CES's contract with the GSA has not been produced, and whereas the conditions present in the Plant on the morning of the accident remain unknown, and whereas no discovery has been taken regarding the activities of CES employees in the Plant on the day of the explosion, it seems premature to dismiss CES, with prejudice. The dismissal of CES, if at all, should be without prejudice as to any cross-claim, or potential third-party claim, which have as yet, not been asserted by D&Z.

### III.   CONCLUSION

Wherefore, Defendant Day and Zimmerman Services, Inc. respectfully requests that this Court DENY Defendant Consolidated Engineering Services, Inc.'s Motion WITHOUT PREJUDICE by entering one of the proposed Orders attached hereto.

        Respectfully submitted,

        **MARKS, O'NEILL,**
        **O'BRIEN & COURTNEY, P.C.**

        */s/ Michael T. Hamilton*
        Dawn C. Doherty, Esquire (414534)
        Michael T. Hamilton, Esquire (474233)
        Norman H. Brooks, Jr., Esquire (PHV)
        Theodore J. Segletes, III, Esquire (PHV)
        913 N. Market Street, Ste. 800
        Wilmington, DE  19801
        *Attorneys for Defendant*
        *Day and Zimmerman Services, Inc.*

DATE:  August 29, 2008