# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARGARET ANN HUDERT, et al.           )
                                      )
        Plaintiffs,                   )         Civil Action No. 1:05-cv-00545
                                      )                    (RBW)
v.                                    )
                                      )
ALION SCIENCE & TECHNOLOGY            )
CORP., et al.                         )
                                      )
        Defendants.                   )

## AFFIDAVIT OF RICHARD SMALL

I, Richard Small, having been duly sworn, hereby state as follows:

1.      I am over the age of eighteen and competent to testify to the following facts.

2.      I am the Director of Operations of EMCOR Government Services (EMCOR), the successor to Consolidated Engineering Services, Inc. (CES). EMCOR is located at 320 23rd Street South, Arlington, Virginia.

3.      Prior to my employment by CES/EMCOR, I was employed by Day & Zimmerman. My last job title for D&Z was also Director of Operations. I left D&Z and joined CES/EMCOR prior to the accident at issue in this litigation.

4.      In 2004, CES had a contract with GSA to provide maintenance and repair at the steam plant in Washington, DC. The steam plant provides steam to multiple federal buildings through pipes that are buried or in tunnels. CES did not have

1



responsibility for operation, maintenance or repair of the tunnels or piping outside of the steam plant.

5. In 2004, at the time of the accident at issue in this lawsuit, D&Z had a contract with GSA to provide maintenance and repair of the steam distribution complex ("SDC") which includes the pipes that are buried and in tunnels in Washington, DC. CES had no role in or responsibility for the SDC.

6. In August 2004, several months **after** the accident at issue in this lawsuit, GSA novated the SDC contract from D&Z to CES. Up until August 2004, CES did not perform any repair or maintenance on the SDC.

7. As far as its role at the steam plant, at the time of the accident at issue in this lawsuit, CES did not monitor gauges or controls in the steam plant. GSA maintained total control over the operations and monitoring at the steam plant including the shut down and re-opening of valves and lines.

8. CES was available to GSA for maintenance at the plant only.

9. I have had my deposition taken in this case. I testified to the availability of CES employees for emergencies. This testimony related solely to the Steam Plant and **did not** include emergencies in the SDC. At the time of the accident at issue in this litigation, GSA had separately contracted with D&Z for work in the SDC.

10. On the date of the incident, CES did not operate, open or otherwise manipulate any of the valves that are a part of the SDC on its own initiative or at the direction of GSA or any other person or entity.

11. Prior to and up to the date of the accident at issue in this litigation, CES did not perform any operation functions of the Steam Plant. Operations were the sole province of GSA.

12. Prior to and up to the date of the accident at issue in this litigation, with respect to Manhole 11, CES did not perform any repairs or maintenance work in Manhole 11.

January 18, 2008                                   _____
                                                   Richard Small

COUNTY OF ARLINGTON       )
COMMONWEALTH OF VIRGINIA)

I, Richard Small, solemnly affirm under oath that the contents of the foregoing paper are true and correct to the best of my knowledge.



Nancy Jean Gaskins
NOTARY PUBLIC
Commonwealth of Virginia
Reg. # 7133736
My Commission Expires
May 31, 2011

_____
Notary Public and Number

January 18, 2008
_____
Date

My commission expires: _____

3

# EXHIBIT C

## Segletes, Theodore J.

| | |
|---|---|
| From: | Segletes, Theodore J. |
| Sent: | Wednesday, March 26, 2008 7:12 PM |
| To: | 'Sean McDonough' |
| Cc: | Brooks Jr., Norman H. |
| Subject: | Stotmeister v. Alion et al |
| Attachments: | DE105772.pdf |

Sean:

Discussed the attached dismissal stip with Norm and we've worked up the language therein for your consideration. It essentially agrees to the dismissal of CES, but is separately executed between CES and D&Z and reserves D&Z's right to claim for contrib or indemnity should the facts support either. We could also probably agree to a broader dismissal without prejudice as to claims of D&Z but I'd have to double check that with Norm.

Please let me know your thoughts.

Ted

Theodore J. Segletes, III, Esq.
Marks, O'Neill, O'Brien & Courtney, P.C.
913 N. Market Street, Suite 800
Wilmington, DE  19801
(302) 658-6538
F: (302) 658-6537
tsegletes@mooclaw.com

DE105772.pdf (72
     KB)

# EXHIBIT D

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| MARY S. STOTMEISTER, et al., : | |
| Plaintiff, : | 2004 C. A. No. 009735 |
| v. : | Judge Judith Retchin |
| ALION SCIENCE AND TECHNOLOGY CORPORATION, et al., : | Next Event: Status Hearing March 7, 2008 |
| Defendants. : | |

**PRAECIPE OF DISMISSAL OF DEFENDANT
CONSOLIDATED ENGINEERING SERVICES, INC. ONLY**

Pursuant to Superior Court Rule 41, it is hereby stipulated by the undersigned, counsel of record for the parties identified below, that any and all claims asserted by or between them, one against the other, are hereby dismissed with prejudice and without costs to either party as against the other; provided, however, that nothing contained herein shall be construed to waive, limit, or otherwise prohibit Defendant, Day & Zimmerman Services, Inc., from raising any claim for contribution or indemnity against Defendant, Consolidated Engineering Services, Inc. at a later time, in this or thorough a separate action, should sufficient facts present themselves to support the same, and notwithstanding the fact that they are not presently pending in this matter.

| | |
|---|---|
| **MARKS, O'NEILL,** <br> **O'BRIEN & COURTNEY, P.C.** | **HUDGINS LAW FIRM** |
| By: _____ <br> Dawn C. Doherty / D.C. Bar No. 414534 <br> Michael T. Hamilton, / D.C. Bar No. 474233 <br> Norman H. Brooks, Jr. / Pro Hac Vice <br> Theodore J. Segletes, III / Pro Hac Vice <br> 913 North Market Street, Suite 800 <br> Wilmington, DE 19801 <br> *Attorneys for Defendant* <br> *Day & Zimmerman Services, Inc.* | By: _____ <br> David D. Hudgins, Esquire <br> Sean C.E. McDonough, Esquire <br> 515 King Street, Suite 400 <br> Alexandria, VA 22314 <br> *Attorneys for Defendant* <br> *Consolidated Engineering Services, Inc.* |

{DE105772.1}

# EXHIBIT E

VIDEOTAPED DEPOSITION OF THOMAS JOHNSON
CONDUCTED ON MONDAY, FEBRUARY 4, 2008

1 (Pages 1 to 4)

```
                                            1
 1  IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
 2         Civil Division
 3  ----------------+
                    |
 4  MARY S. STOTMEISTER, et al, |
                    |
 5      Plaintiff,  |
                    |
 6  vs.             | Civil Action
                    |
 7  ALION SCIENCE AND TECHNOLOGY | No. 04-9735
    CORP.,          |
 8                  |
         Defendants.|
 9                  |
    ----------------+
10
11    Videotaped Deposition of Thomas Johnson
12            Washington, D.C.
13         Monday, February 4th, 2008
14              10:09 a.m.
15
16
17
18
19
20  Job No. 2-120574
21  Pages 1 - 231
22  Reported by: Laurie Bangart-Smith
```

```
                                            2
 1         Videotaped Deposition of
 2             THOMAS JOHNSON
 3
 4    Held at the offices of:
 5         L.A.D. REPORTING
 6      1100 Connecticut Avenue, Northwest
 7         Suite 850
 8         Washington, D.C. 20036
 9         (800)292-4789
10
11
12
13
14
15
16
17    Taken pursuant to notice, before Laurie
18  Bangart-Smith, Registered Professional
19  Reporter and Notary Public in and for the
20  District of Columbia.
21
22
```

```
                                            3
 1           APPEARANCES
 2  ON BEHALF OF STOTMEISTER PLAINTIFF:
 3      WILLIAM LIGHTFOOT, ESQUIRE
 4      KOONZ, McKENNEY, JOHNSON,
 5      DePAOLIS & LIGHTFOOT
 6      2001 Pennsylvania Avenue, Northwest
 7      Suite 450
 8      Washington, D.C. 20006
 9      (202)659-5500
10  ON BEHALF OF DEFENDANT ALION SCIENCE AND
    TECHNOLOGY:
11      JOSEPH L. BEAVERS, ESQUIRE
12      Miles & Stockbridge, P.C.
13      10 Light Street
14      Baltimore, Maryland 21202
15      (410)727-6464
16  ON BEHALF OF DEFENDANT CONSOLIDATED ENGINEERING
    SYSTEMS:
17      SEAN McDONOUGH, ESQUIRE
18      Hudgins Law Firm
19      515 King Street, Suite 400
20      Alexandria, Virginia 22314
21      (703)739-3300
22
```

```
                                            4
 1  (Appearances continued)
 2  ON BEHALF OF DEFENDANT CHERRY HILL CONSTRUCTION:
 3      EILEEN M. O'BRIEN, ESQUIRE
 4      Thompson O'Donnell, LLP
 5      1212 New York Avenue, Northwest
 6      Suite 1000
 7      Washington, D.C. 20005
 8      (202)289-1133
 9  ON BEHALF OF DEFENDANT M&M WELDING & FABRICATORS,
    INC.:
10      JONATHAN R. CLARK, ESQUIRE
11      McCarthy Wilson, LLP
12      100 South Washington Street
13      Rockville, Maryland 20850
14      (301)762-7770
15  ON BEHALF OF DEFENDANT D.C. WATER & SEWER
16  AUTHORITY:
17      ROBERT L. DILLARD, ESQUIRE
18      Douglas & Boykin, PLLC
19      1850 M Street, Northwest, Suite 640
20      Washington, D.C. 20036
21      (202)842-1800
22
```

L.A.D. REPORTING & DIGITAL VIDEOGRAPHY
(202)861-3410 (800)292-4789 (301)762-8282 (703)288-0026 (410)539-3664

**Page 49**

1 the steam such that you could -- it was hot to
2 touch?
3  A  Didn't go near it.
4  Q  Okay. Was the wind moving the steam
5 around in any direction?
6  A  Not to my knowledge. I don't remember
7 the actual conditions of the day.
8  Q  Do you recall any steam coming out of
9 manhole 11 at around 2:00 a.m. in the morning?
10  A  No, sir.
11  Q  Do you recall hearing any water
12 hammering at around 2:00 a.m. in the morning?
13  A  Before this incident I never knew what a
14 water hammer was.
15  Q  Did you hear any -- well, did you hear
16 any unusual sounds at around 2:00 a.m. in the
17 morning?
18  A  No, sir.
19  Q  Did you hear any loud knocking sounds?
20  A  No, sir.
21  Q  You indicated that before this incident
22 you didn't know what a water hammer was. What's

**Page 50**

1 your understanding of a water hammer now?
2  A  Uh --
3     MR. BEAVERS: Object to the extent it
4  asks him to comment on something he doesn't
5  really know about.
6     THE WITNESS: What it -- what it
7  basically -- I looked the document up on the
8  Internet, and what it does say is that it's a
9  push of water that goes from the process of
10  steam being condensated and creates water
11  inside of it, and it's pushed from one end of
12  the pipe to the other, and what happens is it
13  rides on top of the steam that's what makes
14  the hammering effect. It just keeps riding
15  back and forth, to my knowledge.
16 BY MR. LIGHTFOOT:
17  Q  Okay.
18  A  To my understanding, I should say.
19  Q  And this was something you learned after
20 the incident?
21  A  Absolutely. Somebody told me there was
22 a water hammer, and I had no idea what they were

**Page 51**

1 talking about.
2  Q  When did you first hear of a water
3 hammering, the idea of that?
4  A  When GSA came to me and said that they
5 had a water hammering in the basement of the NEOB,
6 and I had no idea what they were talking about.
7  Q  At around 2:00 a.m. in the morning, were
8 you aware that -- well, strike that. At around
9 2:00 a.m. in the morning do you recall any
10 conversation between Cherry Hill and
11 Mr. Stotmeister about turning off the steam?
12  A  No, sir.
13  Q  When you were out in the street on 17th
14 Street, did you hear any loud knocking noises like
15 a water hammering?
16  A  No, sir. I don't know what a water
17 hammer sounds like.
18  Q  Okay. Did you hear any type of unusual
19 sound when you were on the street?
20  A  No, sir. You have to imagine how much
21 noise was on the street. You had excavating
22 equipment working, you had cranes working putting

**Page 52**

1 metal plates down, you had Grunley taking off
2 signs and stuff because of the demonstration, so
3 there was a tremendous amount of noise on the
4 street.
5  Q  Thank you.
6     The GSA report indicates that
7 approximately around 2:00 a.m. the GSA Service
8 Center Plumbing Shop received a phone call that
9 water and steam were collecting in the mechanical
10 room in the New Executive Office Building. Did
11 you know about that phone call the night of the
12 incident?
13  A  No, sir, not until after the fact.
14  Q  And you read that in the report, though,
15 right?
16  A  Yes, sir.
17  Q  Did anyone inform you that water had
18 been collecting in the mechanical room in the New
19 Executive Office Building?
20  A  Yes, sir.
21  Q  And who informed you of that?
22  A  Jay Hawthorn.